Argued and submitted January 9, reversed April 28, 2004

HOOD RIVER COUNTY,
*Respondent,*

*v.*

Francis N. MAZZARA,
*Appellant.*

010058DG; A118596

89 P3d 1195

Bart A. Brush argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Defendant appeals a conviction for violating Hood River County Ordinances (HRCO) under which the owner of a dog may not allow it "to become a public nuisance * * *" by "[d]isturb[ing] any person by frequent or prolonged noises[.]" HRCO 6.16.010; HRCO 6.08.140(E). Defendant argues that the ordinances are invalid as applied to her because ORS 30.935 immunizes farm practices from the application of local government ordinances. We reverse.

ORS 30.935 provides:

"Any local government * * * ordinance or regulation * * * that makes a farm practice a nuisance or trespass or provides for its abatement as a nuisance or trespass is invalid with respect to that farm practice for which no action or claim is allowed under ORS 30.936 * * *."

As relevant here, ORS 30.936 provides, "(1) No farming or forest practice on lands zoned for farm or forest use shall give rise to any private right of action or claim for relief based on nuisance or trespass." A farming practice is defined as:

"[A] mode of operation on a farm that:

"(a)   Is or may be used on a farm of a similar nature;

"(b)   Is a generally accepted, reasonable and prudent method for the operation of the farm to obtain a profit in money;

"(c)   Is or may become a generally accepted, reasonable and prudent method in conjunction with farm use;

"(d)   Complies with applicable laws; and

"(e)   Is done in a reasonable and prudent manner."

ORS 30.930(2).

Defendant operates a farm with a herd of 60 cashmere and angora goats on land that borders a national forest. Several witnesses testified that predators inhabit the area, including coyote, cougar, bear, and bobcat. Defendant's dogs are of a breed, Kuvasz, that traditionally has been used to guard livestock. The dogs are introduced to the herd as puppies so that they will "bond" with it and become protective of

it by, among other methods, barking at predators. The dogs can sense a predator when humans might not be aware of it. Usually, the dogs will continue to bark until either the threat goes away or a person comes to investigate.

On the date that defendant was cited, she and her husband were away from the farm for the day due to a medical appointment. Defendant's neighbor called 9-1-1 to report that a dog had been barking for six hours. A deputy arrived to investigate, and he also heard the dog barking. He drove up defendant's driveway and saw the dog in a pen or pasture. He could not recall if there were goats in the same pasture. The dog's tempo of barking increased when the deputy approached it. The deputy left and later cited defendant for the violation that is at issue here.

Defendant had a trial to the court and was fined $250 for the violation. She assigns error to the trial court's failure "to apply the provisions of ORS 30.935 to the facts of this case" and the trial court's failure "to enter judgment in favor of defendant[ ] when defendant[ ] established each of the elements necessary to prove that her use of livestock guardian dogs and their barking was a 'farm practice' within the meaning of the statute and there was no evidence to the contrary." The two assignments of error essentially reduce to the question whether the trial court properly applied ORS 30.935 in light of the evidence.[1]

From the outset, the trial court expressed skepticism about the applicability of the statute:

"THE COURT:   Anything that you can classify as farm practice would be acceptable, and the neighbor has to live with it; that would be correct?

---

[1] The trial was to the court. Defendant did not formally move for a judgment of acquittal. However, she argued throughout the trial that ORS 30.395 applied and that her case was within the immunity provided by that statute. The trial court expressly decided that question. That was sufficient to preserve the issue for appeal. *State v. Hamilton*, 186 Or App 729, 731 n 2, 64 P3d 1215 (2003). We should emphasize, however, that a motion for judgment of acquittal is the appropriate way to raise a legal issue about the sufficiency of the evidence to support a conviction in a bench-tried case, and defendants should make that motion in order to ensure that the legal issue is properly preserved.

> "[DEFENSE COUNSEL]:   That's the public policy sep-
> arate [*sic*] stated from the statutes of the State of Oregon,
> yes, Your Honor.
>
> "THE COURT:   You're going to have to prove that to
> me. I'm going to be—I'm a little reluctant to believe that
> that's accurate in that specific, in that degree. There may be
> degrees of that, the farm practices, but you can cite me to
> the law specifically in the cases that find that that's the
> case, okay?"

Defendant presented evidence that her use of the dogs was a farm practice as defined in ORS 30.930(2). This was sufficient to raise the defense provided by ORS 30.935. Once the defense was raised, the county had the burden of disproving it. ORS 161.055 (state has burden of disproving defense other than affirmative defense raised at trial); ORS 153.030 (criminal procedure laws applicable to crimes also apply to violations).

Defendant testified that she used the dogs in her goat farming operation to guard livestock and that barking that otherwise would have constituted a nuisance was an essential part of that use. One of her witnesses, James Johnson, the Land Use and Water Planning Coordinator for the Department of Natural Resources Division of the Oregon Department of Agriculture, testified that such use is not only a legitimate farming practice but a recommended one. He had visited defendant's farm, and he agreed that her use of the dogs was reasonable and prudent; he testified that he "saw nothing different [from] what I've observed in other operations." Defendant, then, introduced uncontradicted evidence establishing all of the elements of a "farming practice" as defined by ORS 30.930(2).

The county, for its part, introduced *no* evidence that use of livestock guardian dogs was not a farming practice or that defendant was not using her dogs in a generally accepted, reasonable, and prudent manner. The county focused on the fact that the dog barked for six hours, but it did not adduce any evidence that the dog was not in fact reacting to a predator or that barking of that duration could not, somehow, meet the definition of a farming practice. Certainly six hours of barking would be disturbing to a neighbor.

However, ORS 30.935 provides that farming practices that would *otherwise be a nuisance* under county and local ordinances cannot be made illegal. ORS 30.933 provides the relevant legislative findings and policy:

"(1) The Legislative Assembly finds that:

"(a) Farming and forest practices are critical to the economic welfare of this state.

"(b) The expansion of residential and urban uses on and near lands zoned or used for agriculture or production of forest products may give rise to conflicts between resource and nonresource activities.

"(c) In the interest of the continued welfare of the state, farming and forest practices must be protected from legal actions that may be intended to limit, or have the effect of limiting, farming and forest practices.

"(2) The Legislative Assembly declares that it is the policy of this state that:

"(a) Farming practices on lands zoned for farm use must be protected.

"* * * * *

"(c) Persons who locate on or near an area zoned for farm or forest use must accept the conditions commonly associated with living in that particular setting.

"(d) Certain private rights of action and the authority of local governments and special districts to declare farming and forest practices to be nuisances or trespass must be limited because such claims for relief and local government ordinances are inconsistent with land use policies, including policies set forth in ORS 215.243, and have adverse effects on the continuation of farming and forest practices and the full use of the resource base of this state."

ORS 30.935 promotes a policy of maintaining exclusive use farmland for farming, even at the expense of the neighbors' enjoyment of their property.

After the defense rested, the following colloquy occurred between defense counsel and the trial court:

"[DEFENSE COUNSEL]: If [the complaining neighbor is] unable to verify whether there was or was not a predator around, Mr. Tomson—or Mr. Johnson, from the Oregon Department of Agriculture testified these dogs sense a lot more than humans do. They'll sense by hearing better than humans, smell better than humans, they may know something's there when humans don't, and that's a completely appropriate response for that dog to bark to keep that predator away, and if it takes six hours, it takes six hours.

"THE COURT: Well, I think that's patently ridiculous, and I would never accept that. I'm not venting on you; I'm just venting on the idea that it would be appropriate for some dog out to just bark, bark, bark its life away out there, and that it is not reasonable for an owner of a dog, if it really wants that dog to protect their animals, to not be there to respond to it, to just expect this dog to be out there in an area where there's people that are going to be disturbed. I just don't accept that within the Agricultural Practice Act, and I'm not going to.

"So, if we're arguing about it's okay for six hours of barking, eight hours of barking, two hours of barking, I have the facts of this case and the facts here are that it looks like it's in excess of six hours of barking by this dog, for no apparent purpose that I have. We don't have any testimony other than supposition, and I'm not going to make my decision on supposition, that there may have been a predator somewhere in the world there. That's not going to fly.

"So, I guess on that issue, frankly, you haven't convinced me that the Agricultural Practice Act exception applies to that."

Once defendant raised the defense, the county had the burden of disproving it. ORS 161.055. The county did not do so. The trial court disregarded uncontested facts that established defendant's immunity, and in doing so it erred. Put another way, the court substituted its own opinion that six hours of dog barking could not be a recognized farming practice when the uncontested testimony established that it can be and, in this case, it was. We therefore reverse.

Reversed.